## GATLIFF COAL CO. v. LUCAS, Commissioner of Internal Revenue.

Court of Appeals of District of Columbia. Submitted October 15, 1929. Decided December 2, 1929.

No. 4833.

· J. C. Rogers, of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, V. J. Heffernan, Sewall Key, and John H. McEvers, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. In the year 1925 the Commissioner of Internal Revenue determined a deficiency of $6,297.94 for the year 1919 in the taxes of the Gatliff Coal Company, and notified the company to that effect. The Commissioner's determination was affirmed upon appeal by the Board of Tax Appeals. 8 B. T. A. 726. The present appeal to this court challenges these decisions.

The sole question involved herein is whether the Commissioner, in determining the March 1, 1913, value of a coal mine lease for depletion purposes, should take into consideration the future profits expected from the operation of a commissary or company store owned by the lessee, and located upon the leased property, and operated in conjunction with the mining lease.

The issue is governed by section 234(a) of the Revenue Act of 1918, 40 Stat. 1057, 1077, which reads in part as follows:

"Sec. 234(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

*    *    *    *    *    *

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence;

*    *    *    *    *    *

"(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, that in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date.    *    *    * "

The appellant is a Kentucky corporation, organized in 1909 for the purpose of (a) mining, selling, and shipping coal; (b) building and renting houses; and (c) erecting and maintaining commissaries in connection with the mining, shipping and sale of coal, and to do a general mercantile business. In the years 1909 and 1910, the company secured leases upon 2,603 acres of coal land in Kentucky, extending for 40 years from January 1, 1909, upon an agreed rental of $5,000 for 1910, and $6,000 a year thereafter, whether coal should be mined from the land or not. The land is situated in a mountainous country, with no population on or near the property from which labor could be obtained to mine the coal, and no stores to supply labor-

546

ers or employees with goods of any kind. Consequently it was necessary for the company to construct dwellings for its employees, and to establish and maintain a company store, and to provide suitable buildings therefor. The earnings or profits expected from the renting of dwellings to its employees and the sale of goods to them from the store were among the inducements which caused the company to acquire the leases and open and operate the mines. The mines were opened in 1909, and by 1913 there were about 400 men in the employ of the company and about 2,500 people living about the works. The company practically enjoyed a monopoly of the trade of this population and realized large returns therefrom. The record discloses the amount of the annual returns realized by the company from this source; the overhead and general expenses of the company in conducting its business; the tonnage of coal taken from the mine annually from 1909 until 1919; the amount of recoverable coal remaining unmined in the lands on March 1, 1913; and the probable operating life of the mine.

In assessing the company's income and profits taxes for 1919, the Commissioner held that the only value upon which depletion was allowable for the company's leasehold interest was such as was possessed by the mineral deposit in the ground at the basic date of March 1, 1913. Accordingly he refused to include in the estimated value for depletion any sum because of the expected profits to be derived from the operation of the company store or commissary. Acting upon this rule, the Commissioner found from proven data and by the application of accepted formulæ that the rate of allowance for depletion purposes was $.0145 per ton of coal as mined. See Treasury Regulations 45 (1920 Edition) art. 206(b).

The appellant contends that the right to operate a commissary in connection with a coal mine is such an asset as is subject to a depletion allowance under the law, and that the Commissioner should have included such an allowance in the value for depletion of appellant's leasehold estate on the basic date. Appellant claims that, if the value be computed in accordance with its contention, the rate of depletion or depreciation would be $.0562 per ton, instead of $.0145, as fixed by the Commissioner.

We are of the opinion that the method pursued by the Commissioner is correct. In computing the net income of mines, the statute permits the deduction of a reasonable allowance for depletion and for depreciation of improvements. It is true in this case that

the productive life of the company's commissary depends upon the continuance of the operation of its mine; nevertheless it cannot be said that either business is essentially a part of the other. In contemplation of the tax laws the two lines of business are separate and distinct from one another. The term "depletion" rightly applies to the operation of the mine, but has no application to the operation of the commissary. It is equally true that the commissary cannot be said to be an "improvement" of the mine, and therefore no allowance can be made under the statutory provision for "depreciation for improvements." And in the present case no claim was made under subsection (7) of section 234 (a), supra, for any allowance for "exhaustion, wear and tear of property" used in the commissary, nor does the record contain any evidence relating thereto.

An alternative claim for a recomputation of the expenses of conducting the commissary was made by appellant and was sustained by the Board. No appeal was taken from this ruling; consequently it is not before us.

The decision of the board is accordingly affirmed, with costs.